UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAURA BUTTERFIELD,<br><br>    Plaintiff,<br><br>    v.<br><br>RAFIQ R.A. ABOU-SHAABAN, et al.,<br><br>    Defendants. | No. C04-5698RBL<br><br>ORDER OF TRANSFER TO UNITED STATES DISTRICT COURT FOR OREGON |

    This matter comes before the Court on Defendant's Motion to Dismiss. [Dkt. #16]. Defendant asserts this Court lacks personal jurisdiction due to Plaintiff's amended complaint. Plaintiff's amended complaint now asserts she was not present or domiciled in Washington when the alleged torts were committed. The Court has considered the pleadings filed in support of and in opposition to the motion, and the remainder of the file herein.

    Plaintiff commenced this action on October 21, 2004. She alleges the defendants, Rafiq R.A. Abou-Shaaban, Samar R.A. Abou-Shaaban, and an unspecified number of undiscovered defendants, acting in concert and individually, are liable for intentional interference with custodial rights, intentional infliction of emotional distress, gross negligent infliction of emotional distress, and bad faith. She alleges these result from the kidnapping, concealing and retaining, and denial of access to both children; assault during her visit to them in Saudi Arabia; witness intimidation, blackmail, and duress; bad faith negotiation and fraud. Butterfield seeks damages for personal injury and lost property resulting from the aforementioned torts.

ORDER                                                                 1

**Background and Procedural History**

Defendant moves to dismiss. Thus, the Court considers the facts in the light most favorable to the Plaintiff.

Butterfield married Defendant Rafiq R.A. Abou-Shaaban ("Abou-Shaaban") and together they had two children, Rowia and Rehanna. The parties separated in 1980, with Plaintiff-mother taking the children to Kansas and Abou-Shaaban remaining in Chicago. In January 1981, Abou-Shaaban appeared at Butterfield's residence in Kansas and attempted to abduct the children. Butterfield moved to Portland, Oregon with the children in April 1981. On or about the same time, Defendant-father filed for divorce. Full custody was awarded to Plaintiff-mother in November 1981. That same month, Defendant-father attempted to abduct the children in Portland. He was allegedly assisted by Defendant's counsel, Lawrence Hunt.

On December 31st, 1981, Defendant-father allegedly kidnapped Rowia and Rehanna. He transported them to a country within the Middle East with the alleged help of Defendants John and Jane Does. The Defendant-father ultimately settled in Saudi Arabia with the two children. Criminal indictments and warrants for his arrest followed, both state and federal. In April of 1982, the first of a series of harassing phone calls to Butterfield started. Between 1982 and 1988, Butterfield spent "thousands" of hours trying to locate her children within Saudi Arabia.

In 1989, Butterfield was allowed her one visit to her children when she flew to Saudi Arabia. While in Saudi Arabia, she was threatened and harassed by Defendant-father. At the same time, Defendant-father, with the assistance of his attorney Lawrence Hunt, initiated a series of bad-faith negotiations for the release of the children. During persistent weekly phone calls Abou-Shaaban harassed Butterfield about dropping the criminal charges. These phone calls, taking place over a 17 year period, finally resulted in Butterfield dropping the criminal charges.

In reviewing Defendant's first motion to dismiss for lack of personal jurisdiction [Dkt. # 5], the Court looked to Butterfield's affidavit to clarify issues of personal jurisdiction. There, Butterfield claimed that she and her children were domiciled in Poulsbo, Washington at the time of the kidnapping. As a result, the Court denied Defendant's first motion to dismiss [Dkt. #14]. In her amended complaint, Butterfield stated that she was domiciled in Oregon at all times during the alleged torts by Defendant-father. In

ORDER 2

1  response to the amended complaint [Dkt. #25], Abou-Shabaan again moves to dismiss.

**Issues before the Court**

Abou-Shaaban moves to dismiss, arguing:

(1.) This Court lacks personal jurisdiction. Butterfield's amended complaint describes her as domiciled in Oregon at all relevant times. The amended complaint's only reference to Butterfield in Washington is her move to the state in 2003, four years after the last alleged tort.

(2.) If the Court retains jurisdiction, then Washington state law must apply. Under Washington state law, the statute of limitations has run on all of Butterfield's claims.

(3.) If the Court finds both jurisdiction and that Oregon law does apply, Plaintiff's case must still be dismissed because the statute of limitations has run in Oregon.

Because the Court agrees with the Defendant's first argument, the second two are not addressed.

**Analysis**

**1. Personal Jurisdiction**

Defendant's first motion to dismiss for lack of personal jurisdiction was denied on the basis of an affidavit by Butterfield. She claimed to have been present and/or residing in Washington state at the time of the alleged kidnapping. On the basis of that affidavit, the Court found jurisdiction.

The Court must now reconsider its earlier order. Butterfield's amended complaint contradicts the affidavit. The affidavit asserted that she lived in Poulsbo, Washington during November and December of 1981. In an apparent attempt to invoke Oregon law, Plaintiff now claims that she moved to Portland, Oregon in April 1981. [Dkt. #25, Paragraph 10]. Paragraph 14 describes the Defendant taking the children from Butterfield's "Oregon residence" on December 31st and promising to return them to her "Oregon household." Additionally, Paragraph 17 states "*From the time of the abductions,* between January 1, 1982 and until the fall of 2003, Plaintiff-mother worked, remarried and remained domiciled in Portland, Oregon...." (emphasis added). The Plaintiff's Reply to the Defendant's Motion to Dismiss also contradicts the affidavit. [Dkt. #24, page 3 "All tortious acts perpetrated by the defendant-father did ultimately occur while plaintiff-mother was domiciled in Oregon. [T]he impact of defendant-father's tortious conduct directly upon plaintiff-mother while physically in Oregon and the State where these acts ultimately had their effects on plaintiff-mother throughout the decades to follow, was also clearly *Oregon."* (emphasis in

ORDER                                            3

original)].

Any ambiguities which favored the Plaintiff in the original complaint are erased by the amended complaint. A comparison of the two relevant sections demonstrates the point. In Paragraph 13 of the original complaint, which corresponds to Paragraph 14 of the Amended Complaint, Butterfield describes the abduction occurring at her "residence" and "household." The original complaint did not describe where that residence was. On that basis, this Court looked to Butterfield's affidavit for guidance. In considering Defendant's second motion to dismiss, the Amended Complaint leaves little reason for return to the affidavit. The court has a duty to resolve ambiguities in favor of the opposing party when considering a motion to dismiss, but here, the only remaining ambiguity is insufficient to become dispositive.

Therefore, the Court finds that Butterfield had no presence in Washington relative to the alleged torts. Without that, this Court does not have jurisdiction. For this reason, the defendant's remaining two arguments are not addressed.

**2. "Wrong court" Transfer**

Where a complaint is defective, the case may be transferred to a proper forum, i.e. any court in which the action could have originally been brought. 28 U.S.C. § 1406(a). A transfer to federal district court in Oregon is proper because it is a venue in which the action could have been brought. 28 U.S.C. § 1406(a). The alleged torts arose there. *See District No. 1, Pacific Coast District v. Alaska,* 682 F.2d 797 (9th Cir. 1982) ("This court has stated that a claim arises "in any district in which a substantial part of the act, events, or omissions occurred that gave rise to the claim for relief.").

That this court does not have personal jurisdiction over the defendant is no bar to transfer. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) ("Nothing in [§ 1406(a)] indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants."). Wrong court transfers are guided by further consideration than personal jurisdiction. A "wrong court" transfer under § 1406(a) is transferrable if it is in the interest of justice. *See, e.g., Pacific Coast District,* 682 F.2d at 799.

The interest of justice is determined by weighing the basic equities of the case. *Goldlawr,* 369 U.S. at 467. A transfer must serve judicial economy, weigh the impact of the statute of limitations, and evaluate the relative injustice imposed on both parties. *Id.* Judicial economy is met here by a transfer because it

ORDER                                                                 4

saves another action being filed. Second, the statute of limitations element of *Goldlawr*'s test is not at issue.[1] Finally, the relative injustice to both parties due to transfer is minimal compared to dismissal. The Plaintiff is allowed her day in court, so Butterfield suffers less burden by transfer than by dismissal in light of the great lengths she has gone to in rectifying the initial tort. *See Id.* ("The problem which gave rise to the enactment of the section was that of avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn."). Defendant's burden is comparable regardless of the forum. He is neither a resident of Washington nor Oregon and would be inconvenienced by either forum. If anything, a transfer is more convenient to him because his attorney's practice is based in Oregon.

Finally, because choice of law has been raised by both parties: upon transfer to Oregon, Oregon law applies. *See Muldoon v. Tropitone Furn. Co.*, 1 F.3d 964, 966-67 (9th Cir. 1993) (holding in a § 1406(a) transfer the transferee court must apply the law of the state in which it is located.).

It is therefore **ORDERED** that this matter is **TRANSFERRED** to the Federal District Court of Oregon. The Clerk is directed to send uncertified copies of this Order to the Clerk of the Federal District Court of Oregon, and to all counsel of record.

DATED this 19th day of April, 2005

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[1] The import of the statute of limitations as described in *Goldlawr* is distinct as compared to its import in the instant case. *Goldlawr* addressed situations in which a defendant's cause of action expired in the time between the original filing and the hypothetical second filing of the suit in a proper forum. Here, Butterfield's cause of action is not time barred in the time between her claim being filed and this transfer. Instead, her action is transferred to the venue having personal jurisdiction over the parties which also happens to have a more favorable statute of limitations. *See Goldlawr,* 369 U.S. at 467.

ORDER 5